**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**THIERNO AMADOU DIALLO,**

**Petitioner,**

**- against -**

**KENNETH GENALO, ET AL.,**

**Respondents.**

**26-cv-6040 (JGK)**

**Memorandum Opinion and Order**

**John G. Koeltl, District Judge:**

On July 16, 2026, the petitioner, Thierno Amadou Diallo, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). ECF No. 1. On July 23, 2026, the petitioner filed an amended petition, that sought, among other relief, the petitioner's immediate release. ECF No. 8 ("Am. Pet."). On August 19, 2026, this Court granted in part and denied in part that petition. Diallo v. Genalo, No. 26-cv-6040, 2026 WL 2426905, at *3 (S.D.N.Y. Aug. 19, 2026), ECF No. 28. The Court ruled that the petitioner was required to exhaust his administrative remedies and ordered the Government to hold a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven days of the order. The Court ordered that, at that bond hearing, the Government would "bear the burden to prove, by clear and convincing evidence, that the petitioner is a danger to the community or a risk of flight." Id. at *3.[1]

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

On August 24, 2026, an immigration judge ("IJ") held a bond hearing for the petitioner. The IJ denied the petitioner bond on the grounds that the Government had proved by clear and convincing evidence that the petitioner posed a risk of flight. A bond memorandum signed by another IJ on September 9, 2026 provided more details on the denial of bond based on the record before the immigration court.[2]

The petitioner now moves this Court to reconsider its August 19, 2026 Order, or in the alternative, enforce the Order.

For the reasons that follow, the petitioner's motion is **denied** in full.

**I.**

The factual background of this case has been set forth in the Court's previous decision on the amended habeas petition. See Diallo, 2026 WL 2426905, at *1. Familiarity with that decision is assumed. The following factual and procedural background is undisputed unless otherwise noted.

On August 19, 2026, this Court denied in part and granted in part the petitioner's habeas petition. The Court, in denying the petition, ruled that the petitioner was required to exhaust his administrative remedies by requesting a bond hearing before the immigration court. The Court ordered the Government to "ensure that the petitioner receives a bond hearing before an

[2] The bond memorandum was signed by Judge Ubaid ul-Haq because Judge Dara Reid, who conducted the bond hearing, was out of office and this case was noted to be a priority. Judge ul-Haq represented that the judge had conducted a thorough and comprehensive review of the record and was familiar with all of the evidence. This substitution is authorized by 8 C.F.R. § 1240.1(b).

Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days" or otherwise release the petitioner. Id. at *3. The Court also ordered that the Government "bear the burden to prove, by clear and convincing evidence, that the petitioner is a danger to the community or a risk of flight" at the bond hearing. Id.

On August 24, 2026, five days after this Court's Order, Immigration Judge Dara Reid held a bond hearing and denied the petitioner bond. At that hearing, Judge Reid concluded that the Government "met their burden by clear and convincing evidence that [the petitioner] is a flight risk." Guyon Decl., Ex. 1 ("Bond Hr'g Tr.") at 30:8–24, 31:13–19, ECF No. 32-1. This finding was based on the petitioner's testimony and Judge Reid's review of the evidence submitted by the parties. Specifically, Judge Reid was concerned by inconsistencies and contradictions with respect to the petitioner's address history. The bond hearing largely centered on Judge Reid's inability to determine where the petitioner resided and at what time, leading Judge Reid to conclude that the petitioner had been dishonest with the court about where he was living. Id. Judge Reid, finding that the petitioner did not have a fixed address, denied bond. The petitioner appealed the denial of bond to the Board of Immigration Appeals ("BIA").[3] Maria Decl. ¶ 15, ECF No. 29-1. The petitioner also filed this motion with the Court.

In his motion, the petitioner argues that this Court should reconsider its prior ruling because the bond hearing is new evidence that the petitioner

[3] The record does not reflect the status of the appeal to the BIA.

has exhausted his administrative remedies. The petitioner further argues that reconsideration is appropriate because the Court "incorrectly represented that there is 'no dispute that the petitioner is currently lawfully detained pursuant to 1226(a)'" and that immediate release is necessary to prevent the petitioner's "continued unlawful detention." See Pet'r's Mot. at 5, 8, ECF No. 29. Alternatively, the petitioner asks this Court to enforce its prior Order, arguing that the bond hearing failed to comply with this Court's procedural requirements, thus entitling the petitioner to immediate release pursuant to the Order. Id. at 10.

After the Government submitted its opposition to the petitioner's motion with this Court, Immigration Judge Ubaid ul-Haq signed a written memorandum on the denial of bond dated September 9, 2026. The written memorandum acknowledges this Court's prior Order and the requirement that the Government would bear the burden to prove, by clear and convincing evidence, that the petitioner is a danger to the community or a risk of flight rather than the ordinary standard of proof at immigration bond hearings, wherein the noncitizen in custody bears the burden. See Pet'r's Reply, Ex. 1, ("Bond Mem.") at 1, ECF No. 34-1. That memorandum sets out the law that applies to custody determinations and more thoroughly explains the immigration court's reasoning in denying bond. The memorandum also considers factors that were not clearly discussed at the bond hearing, including whether the petitioner is a danger to the community, his community ties, and whether alternatives to detention might be appropriate. Id. at 2–3, 5 n.6.

While this motion was pending before the Court, Judge Reid granted the petitioner's application for asylum. See ECF No. 35. The Government indicated that it intends to appeal the grant of asylum to the BIA. Mot. Hr'g Tr. at 10:24–11:1. The petitioner remains in detention under § 1226(a).

**II.**

A motion for reconsideration is governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3 which provide identical standards. See Sigmon v. Goldman Sachs Mortg. Co., 229 F. Supp. 3d 254, 256 (S.D.N.Y. 2017). "The decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court." Vincent v. Money Store, No. 3-cv-2876, 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011). "A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced . . . ." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "A court may grant a Rule 59(e) motion only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 142 (2d Cir. 2020). "Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly." Anwar v. Fairfield Greenwich Ltd., 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011).

The petitioner argues that reconsideration is warranted in this case "based on new evidence and the need to correct error and prevent manifest

injustice." Pet'r's Mot. at 3, ECF No. 29. The new evidence the petitioner points to is the August 24 bond hearing, that the petitioner claims was procedurally defective. As described in more detail below, the petitioner's bond hearing was adequate under § 1226(a) and this Court's prior Order. The bond hearing moots any claim the petitioner had of unlawful detention without adequate process. Accordingly, the bond hearing is not new evidence that warrants granting the extraordinary remedy of reconsideration.

The petitioner also argues that reconsideration is warranted because the Court's previous Order stated that "there is no dispute that the petitioner is currently lawfully detained pursuant to § 1226(a)." Diallo, 2026 WL 2426905, at *3. The petitioner argues that the Court's formulation was incorrect because the petitioner did not concede lawful detention. The description of the dispute in the prior Order was based on this Court's determination that the law to be applied to the petitioner's request for relief was the law under § 1226(a), because all parties to the petition had conceded that the petitioner was currently detained pursuant to § 1226(a). This note was made specifically to distinguish the then-current dispute about the petitioner's detention pursuant to § 1226(a)—a statute authorizing discretionary detention for noncitizens without final removal orders—from a prior, distinct dispute in the case about the petitioner's detention pursuant to § 1231—a different statute authorizing detention for noncitizens with final removal orders. As the Court explained, "[I]n supplemental submissions, the parties agree that because the immigration court granted the petitioner's motion to reopen, the

petitioner is currently detained pursuant to 8 U.S.C § 1226(a). See ECF No. 20, at 1; ECF No 21, at 1." Id. at *2. The Court properly applied the law under § 1226(a) and found that habeas relief was not warranted so long as the Government provided the petitioner with a bond hearing at which the Government bore the burden of proving, by clear and convincing evidence, that the petitioner was a danger to the community or a risk of flight—which the Government agreed to do.

Moreover, any claim the petitioner previously raised for habeas relief was moot. The petitioner previously argued that his ongoing detention absent an individualized custody determination was unlawful. See ECF No. 20, at 1–2. However, the Court ordered an adequate bond hearing before an immigration judge that complied with the requirements of § 1226(a) and due process. See Velasco Lopez v. Decker, 978 F.3d 842, 848 (2d Cir. 2020). At that bond hearing, the Government was required to bear the burden of proof to show, by clear and convincing evidence, that the petitioner is a danger to the community or a risk of flight. The petitioner's arguments that a lack of process made his current detention unlawful are now moot and not a basis for reconsideration. The petitioner's contention that the bond hearing did not comply with this Court's Order is discussed below.

The petitioner makes no arguments that justify a motion for reconsideration. Accordingly, the motion for reconsideration is **denied**.

**III.**

In alternative to the motion to reconsider, the petitioner asks the Court to enforce its prior Order that required the Government to ensure that the petitioner received a bond hearing where the Government would bear the burden to prove, by clear and convincing evidence, that the petitioner is a danger to the community or a risk of flight. Diallo, 2026 WL 2426905, at *3. The petitioner argues that the Government did not in fact bear the burden of proof at the hearing, in violation of the Court's Order. The petitioner accordingly requests that the petitioner be released immediately.

Section 1226(e) of Title 8 provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Federal district courts are thus "generally barred from reviewing [an] immigration judge's bond determinations." Arana v. Barr, No. 19-cv-7924, 2020 WL 2094098, at *8 (S.D.N.Y. May 1, 2020).

This provision, however, does not "limit habeas jurisdiction over constitutional claims or questions of law." Velasco Lopez, 978 F.3d at 850. "Whether the IJ failed to apply the correct legal standard and to hold the government to its burden of proof is a question of law that this Court may review." R.R.M.C. v. Decker, No. 22-cv-2952, 2022 WL 4639674, at *3 (S.D.N.Y. Sept. 30, 2022). Moreover, the Court "retains jurisdiction to review compliance with a conditional grant of the writ of habeas corpus. . . ." J.M.P. v. Arteta, 807 F. Supp. 3d 265, 285 (S.D.N.Y. 2025). "In reviewing a motion to

enforce, . . . the Court's task is narrow: it is to determine whether [the Government] complied with this Court's order, not to review the hearing evidence de novo." Arana, 2020 WL 2094098, at *7.

In response to this Court's Order, the petitioner was promptly granted a bond hearing where Immigration Judge Reid, found that the Government had met its burden by clear and convincing evidence that the petitioner was a flight risk. See Bond Hr'g Tr. at 30:8–24. This determination was driven largely by the Judge Reid's conclusion that the petitioner failed to provide the immigration court with a fixed address in the United States. Id. The plaintiff submitted that he had lived at an address on West 55th Street in Manhattan for two years with his aunt and uncle. Id. at 21:11–19. The West 55th Street address was consistent with the petitioner's aunt's identification card and his own tax returns, but inconsistent with other documents the petitioner submitted for the hearing, including his aunt and uncle's tax returns for 2025 that listed a home address in Brooklyn and two invoices listing the same address in Brooklyn in 2026. Id. at 30:11–15. The petitioner testified that he had never lived in Brooklyn. Id. at 16:13. However, the Government submitted a change of address form signed by the petitioner in 2024 which indicated that he was moving from an address in Brooklyn to an address in Manhattan. See Guyen Decl., Ex. 3 at 25, ECF No. 32-3. The petitioner claimed that the address was that of an association that was actually based in Harlem. See Bond Hr'g Tr. at 18:18–19:25. Based on the evidence on the record, the immigration court struggled to parse the petitioner's address history in New York.

See id. at 18:2–20:2. Judge Reid thus found that the petitioner had "not been forthcoming about his addresses in the United States" and denied the request for bond. Id. at 30:20–22.

After the oral determination by Judge Reid, Judge ul-Haq signed a bond memorandum that thoroughly reviewed the evidence before the immigration court at the bond hearing. That memorandum concluded that the Government had failed to meet its burden of proof to establish by clear and convincing evidence that the petitioner was a danger to the community. See Bond Mem. at 2–3. However, the memorandum also found that the Government had borne its burden to prove by clear and convincing evidence that the petitioner was a risk of flight. Id. at 3–5. In assessing the petitioner's flight risk, the memorandum considered multiple factors, including the inability of the court to determine a fixed address for the petitioner. Id. at 5. Additionally, the memorandum discussed the petitioner's previous grant of asylum, his community and family ties, and whether alternatives to detention might be appropriate. Id. The memorandum concluded that the petitioner's favorable factors did not outweigh the significant flight risk. Id.

"The key inquiry in determining whether the Immigration Judge complied with the Court's Order is whether the Immigration Judge relied upon proof that could not possibly establish by clear and convincing evidence—as a matter of law—that [the] petitioner was a danger to the community" or a risk of flight. Arana, 2020 WL 2094098, at *7. The evidence submitted in connection with the petitioner's bond hearing could, in fact, establish that the

petitioner was a risk of a flight by clear and convincing evidence. The bond memorandum in particular explains that the immigration court considered multiple factors in determining the petitioner's risk of flight, and that the petitioner's lack of a fixed address was a "particularly weighty" factor. Bond Mem. at 3. Both the oral determination and the subsequent written memorandum indicate that the immigration court "reviewed the evidence, heard arguments from both sides, and came to a legally permissible conclusion in light of the available evidence." Medley v. Decker, No. 18-cv-7361, 2020 WL 1033344, at *3 (S.D.N.Y. Mar. 3, 2020) (Nathan, J.).

The bond hearing was not without faults. Judge Reid made mistakes, including by attributing to the petitioner amounts of expenses that had actually been claimed by his uncle. See Bond Hr'g Tr. at 22:3–23:15. By speculating on property value of the West 55th Street address, Judge Reid also was not relying on any evidence in the record. Id. at 28:23–29:3. However, these errors were not present in the subsequent written bond memorandum that carefully reviewed the record before the immigration court and came to the same conclusion.

Although the petitioner has suggested that it was unusual for a subsequent written decision to be issued, there was nothing improper about the immigration court's issuing a detailed written decision after an oral ruling. In Arana, for example, the district court ordered a bond hearing before an immigration judge where the Government would bear the burden of proof. 2020 WL 2094098, at *2. In ruling on a motion to enforce, the court found that the

immigration judge's oral ruling from the bench did not comply with the court's prior ruling because, in part, it made no reference to the standard of proof that the court ordered. Id. at *4. The immigration judge issued a subsequent written decision that was much more detailed and addressed the standard of proof, along with other factors. Id. at *4–5. The court rejected the argument that the later-filed written decision was a "post hac rationalization of [the] oral ruling, which did not comply" with the court's prior order, and considered the written decision in determining that the Government had complied with the court's prior order. Id. at *9 n.6. Here, too, the Court considers the subsequent bond memorandum in assessing compliance with its prior Order.

Other objections raised by the petitioner to his bond determination are also without merit. Although the petitioner complains that Judge Reid did not grant him an opportunity to call his uncle as a witness, this was based on the petitioner's own failure to provide a witness list to the court in advance of the hearing. Bond Hr'g Tr. at 29:18–30:4. The petitioner also objects to the court's acceptance of evidence the Government submitted less than an hour before the hearing, but Judge Reid called a recess for the parties and the court to review the evidence. Id. at 2:22 –3:5. The petitioner also claims that by relying on evidence that the petitioner, rather than the Government, submitted, Judge Reid did not place the burden on the Government. However, immigration judges can rely on all evidence that is submitted in the record, regardless of who submitted it. See Matter of Dobrotvorskii, 29 I&N Dec. 211,

211 (BIA 2025). The task for the immigration judge, pursuant to the Court's Order, was to determine—based upon all the evidence—whether the Government had proved by clear and convincing evidence that the petitioner was a danger to the community or a risk of flight. It did not limit the judge from considering evidence submitted by the petitioner.

Both Judge Reid and Judge ul-Haq clearly indicated that the burden of proof was on the Government. Bond Hr'g Tr. at 30:23–24; Bond Mem. at 1. Both judges "reviewed the record, identified the conflicting evidence, and reasonably resolved the conflicts to reach a conclusion." Medley, 2020 WL 1033344, at *3. While the petitioner "may disagree with [the] resolution of the factual disputes, under these circumstances, the Court cannot conclude that the evidence the Immigration Judge[s] relied upon in reaching [their] conclusion could not possibly establish by clear and convincing evidence" that the petitioner posed a risk of flight. See id. The petitioner's bond hearing complied with the Court's prior Order and the motion to enforce is accordingly **denied.**

**IV.**

While this motion was pending with the Court, Judge Reid granted the petitioner's application for asylum. See ECF No. 35. In addition to the petitioner's appeal to the BIA of the denial of bond, the petitioner has an additional administrative remedy available to him: another bond hearing before an immigration judge. Pursuant to 8 C.F.R. § 1003.19(e), the petitioner

may request an additional bond hearing based on a material change of circumstance. Given the petitioner's successful asylum claim, the petitioner may again seek the same relief he requests from this Court—his immediate release from detention—through an administrative channel.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the petitioner's motion for reconsideration, or in the alternative to enforce, the Court's August 19 Order is **denied**.

**SO ORDERED.**

**Dated:** **New York, New York**
**October 12, 2026**

**John G. Koeltl**
**United States District Judge**